**FILED**

Feb 26 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

ANTHONY M. BARNES (Bar No. 199048)
JASON R. FLANDERS (Bar No. 238007)
Email: amb@atalawgroup.com
AQUA TERRA AERIS LAW GROUP LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Telephone: (917) 371-8293

ERIN K. CLANCY, SBN 249197
Email: erin@cacoastkeeper.org
CALIFORNIA COASTKEEPER ALLIANCE
1100 11th Street, 3rd Floor
Sacramento, CA 95814
Telephone: (619) 313-3037

*Attorney for Plaintiffs*
CALIFORNIA COASTKEEPER, INC., dba
CALIFORNIA COASTKEEPER ALLIANCE, and
THE OTTER PROJECT, INC., for itself and for
MONTEREY COASTKEEPER, a program of
THE OTTER PROJECT, INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA COASTKEEPER ALLIANCE; THE OTTER PROJECT, INC., and MONTEREY COASTKEEPER, | Case No.:  5:20-cv-08304-NC |
| Plaintiffs, | **CONSENT DECREE** |
| vs. | |
| STURDY OIL COMPANY, | |
| Defendant. | |

## <u>CONSENT DECREE</u>

**WHEREAS,** California Coastkeeper Alliance is a non-profit public benefit water advocacy organization dedicated to protecting California's coasts and oceans. The Otter Project, Inc. is a non-profit public benefit organization working to protect our watersheds and coastal oceans for the benefit of California sea otters and humans through science-based policy and advocacy. Monterey

1  Coastkeeper is program of the Otter Project, Inc., and a participant in the Coastkeeper Alliance.

2  They are non-profit associations with similar missions (hereinafter "**Coastkeeper & The Otter**

3  **Project**").

4      **WHEREAS**, Sturdy Oil Company ("**Sturdy Oil**" or "**Defendant**") own and operate an

5  industrial facility at 33 Associated Lane, Pajaro, CA 95706 ("**Facility**").

6      **WHEREAS**, the Facility industrial activities consist of bulk petroleum product storage and

7  distributions, repair and maintenance of commercial trucks and trailers, and fueling of commercial

8  trucks and trailers. The Facility is categorized under Standard Industrial Classification ("**SIC**")

9  Code 5171, covering establishments primarily engaged in petroleum bulk stations and terminals.

10      **WHEREAS**, stormwater discharges associated with industrial activity at the Facility are

11  regulated by the National Pollutant Discharge Elimination System ("**NPDES**") General Permit No.

12  CAS000001 [State Water Resources Control Board], Water Quality Order 97-03-DWQ, and as

13  amended by Water Quality Orders Nos. 2015-0057-DWQ and 2015-0122-DWQ ("**General**

14  **Permit**" or "**Permit**"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*

15  ("**Clean Water Act**" or "**CWA**"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

16      **WHEREAS**, Defendant's operations at the Facility may result in discharges of pollutants

17  into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402.

18  33 U.S.C. §§ 1311(a), 1342;

19      **WHEREAS**, the General Permit requires all permittees, including Defendant, to comply

20  with, inter alia, the following mandates: (1) develop and implement a stormwater pollution

21  prevention plan ("**SWPPP**") and a stormwater monitoring implementation plan ("**MIP**"), (2)

22  control pollutant discharges using, as applicable, best available technology economically achievable

23  ("**BAT**") or best conventional pollutant control technology ("**BCT**") to prevent or reduce pollutants

24  through the development and application of Best Management Practices ("**BMPs**"), which must be

25  included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to

26  comply with any and all applicable Water Quality Standards ("**WQS**"), and (5) implement a

27  monitoring and reporting program designed to assess compliance with the Permit;

28

1    **WHEREAS**, on August 18, 2020, Plaintiffs issued a notice of intent to file suit ("**60-Day**

2    **Notice**") to Defendant, its registered agent, the Administrator of the United States Environmental

3    Protection Agency ("**EPA**"), the Executive Director of the State Water Resources Control Board

4    ("**State Board**"), the Executive Director San Francisco Bay Regional Water Quality Control Board

5    ("**Regional Board**"), and the Regional Administrator of EPA Region IX, alleging violations of the

6    Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by

7    Order No. 2015-0122-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2)

8    TMDL Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site

9    or Regional Storm Water Capture and Use, at the Facility;

10   **WHEREAS**, on November 24, 2020, 2020, Coastkeeper & The Otter Project filed a

11   complaint against Sturdy Oil in the Northern District of California, Civil Case No. 5:20-cv-08304

12   ("**Complaint**");

13   **WHEREAS**, Plaintiffs' complaint alleged violations of the General Permit and CWA for

14   Defendant's discharges of pollutants into storm drains and surface waters, including the Pajaro

15   River, the Pajaro River Estuary, and Monterey Bay ("**Receiving Waters**");

16   **WHEREAS**, Plaintiffs and Defendant (collectively "**Settling Parties**" or "**Parties**") agree

17   that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions

18   appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without

19   further proceedings;

20   **WHEREAS**, all actions taken by the Defendant pursuant to this Consent Decree shall be

21   made in compliance with all applicable federal, state and local rules and regulations.

22   **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING**

23   **PARTIES AS FOLLOWS:**

24   1.    The Court has jurisdiction over the subject matter of this action pursuant to Section

25   505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

26   2.    Venue is appropriate in the Northern District Court pursuant to Section 505(c)(1) of

27   the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking

28   place is located within this District;

3.    The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4.    Coastkeeper & The Otter Project have standing to bring this action;

5.    The Court shall retain jurisdiction over this action for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issue raised within the two (2) year term of this Consent Decree.

## I.    OBJECTIVES

6.    It is the express purpose of the Setting Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by Coastkeeper & The Otter Project in its 60-Day Notice. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.    In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.    AGENCY REVIEW AND CONSENT DECREE TERM

### A.    AGENCY REVIEW OF CONSENT DECREE

8.    <u>Agency Review</u>. Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the EPA (the "**Federal Agencies**"), within three (3) business days of the final signature of the **Parties**, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

9.    <u>Court Notice</u>. Plaintiffs shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order coordinate the Court's calendar with the 45-day review period.

1    10.    Entry of Consent Decree. Following expiration of the Federal Agencies' 45-day

2    review period, Plaintiffs shall submit the Consent Decree to the Court for entry.

3    **B. EFFECTIVE DATE AND TERM**

4    11.    Effective Date. The Effective Date of this Consent Decree shall be the date of

5    execution.

6    12.    Term & Termination. This Consent Decree shall terminate two (2) years from the

7    Effective Date unless: 1) either the Facility satisfies the requirements of and receives an approval

8    for a "Notice of Termination" ("**NOT**") as that term is defined in the General Permit, in which case

9    the Consent Decree will terminate as to the Facility approved for NOT five (5) days after notice of

10   the NOT is provided to Coastkeeper & The Otter Project, provided all monetary requirements owed

11   under the Consent Decree are satisfied at the time the Facility receives NOT approval; or 2) one of

12   the Settling Parties has invoked Dispute Resolution in accordance with Section IV of this Consent

13   Decree, in which case the Consent Decree  will terminate within the earlier of fifteen (15) days of

14   notice by the Settling Parties that invoked Dispute Resolution that the dispute has been fully

15   resolved, or an order of the Court resolving the dispute and terminating the Consent Decree

16   ("**Term**").

17   III. **COMMITMENTS OF THE SETTLING PARTIES**

18   **A. STORM WATER POLLUTION CONTROL BMPs**

19   13.    Current and Additional Best Management Practices: In addition to maintaining the

20   current BMPs described in the Facility's SWPPP, Defendant shall develop and implement BMPs

21   identified herein satisfactory to comply with the provisions of this Consent Decree and the General

22   Permit, including but not limited to those that achieve the BAT and the BCT. In addition, the

23   Industrial General Permit Receiving Water Limitations require that discharges from the Facility

24   "not cause or contribute to an exceedance of any applicable water quality standards contained in a

25   Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." Defendant

26   shall develop and implement BMPs necessary to comply with the Industrial General Permit

27   requirement to achieve compliance with BAT/BCT standards, to comply with the applicable water

28

1  quality standards, and to prevent or reduce contamination in storm water discharges from the

2  Facility in compliance with this Consent Decree.

3      14.    <u>Structural and Non-Structural BMPs for the Facility</u>: Within ninety (90) days of the

4  Effective Date, Defendant shall develop and implement BMPs at the Facility that meet one of the

5  following standards:

6          a.  Capture and infiltration of storm water consistent with Volume-Based BMP

7              standards from the General Permit (Section X.H.6.a);

8          b.  Capture and treatment of storm water, consistent with the Flow-Based BMP

9              standards from the Permit (Section X.H.6.b);

10                  **B. SAMPLING AT THE FACILITY**

11     15.    Sturdy Oil shall document that its monitoring program is consistent with the General

12  Permit. During the life of this Consent Decree, Defendant shall collect samples of storm water

13  discharge from Discharge Locations designated in the SWPPP as follows: Defendant shall collect

14  storm water samples from each Discharge Location from at least four (4) Qualifying Storm Events

15  as required by the General Permit (i.e., two Qualifying Storm Events during the first half of the

16  reporting year[1] and two Qualifying Storm Events during the second half of the reporting year). A

17  "**Qualifying Storm Event**" is a storm that produces a discharge from at least one (1) drainage area

18  and is preceded by forty-eight (48) hours with no discharge from any drainage area. Any failure to

19  collect samples as required by the General Permit shall be documented and submitted to

20  Coastkeeper & The Otter Project by email within five (5) days of the data a sample should have

21  been collected but was not. If, prior to March 1 of a reporting year, Sturdy Oil has collected samples

22  from two (2) or fewer qualifying storm events, Sturdy Oil shall, to the extent feasible, collect

23  samples during as many QSEs as necessary until a minimum of four (4) storm events have been

24  sampled for the reporting year to the extent that there are sufficient number of Qualifying Storm

25  Events.

26     16.    <u>Sampling Parameters</u>: All samples collected pursuant to this Consent Decree shall be

27  analyzed for the parameters listed in Table 1.

28

---

[1] A reporting year is defined as July 1 to June 30.

17.    <u>Laboratory and Holding Time</u>. Except for pH samples, delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

18.    <u>Detection Limit</u>: Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the Industrial General Permit and Table 1 below.

19.    <u>Reporting</u>: Defendant shall provide complete laboratory results of all samples collected at the Facility to Coastkeeper & The Otter Project Coastkeeper & The Otter Project within thirty (30) days of receiving the results.

**C.    REDUCTION OF POLLUTANTS IN DISCHARGES**

20.    Table 1 Numeric Action Limits ("NALs"): the BMPs to be implemented as set forth in this paragraph are intended to reduce pollutants in storm water at the Facility to levels below those in Table 1. As of the Effective Date, and for the remainder of the **Term**, if storm water samples demonstrate an exceedance of a numeric limit in Table 1 in a single reporting year, Defendant shall comply with the action plan requirement set forth below.

TABLE 1

| Analytes | Annual Values | Instantaneous Values | Source of Limit |
|---|---|---|---|
| Total Suspended Solids | 100 mg/L | 400 mg/L | EPA Benchmark |
| Oil & Grease | 15 mg/L | 25 mg/L | EPA Benchmark |
| pH | 6.5-8.5 s.u. | | Basin Plan |

21.    Table 1 Exceedances are defined as follows: in any reporting year under the term of this Consent Decree an Action plan shall be required if 1) the average of all storm water analytical results for individual pollutant(s) exceeds any of the applicable benchmarks as set forth in Table 1; or 2) any storm water sample contains a single pollutant at a concentration that exceeds an Instantaneous NAL as set forth in Table 2 of the Permit.

22.    <u>Action Plan for Table 1 Exceedances</u>: If storm water samples demonstrate exceedance of as defined above, Defendant shall prepare and submit to Coastkeeper & The Otter

1  Project a plan for reducing and/or eliminating the discharge of pollutants ("**Action Plan**") for that

2  Facility.

3      23.    If an Action Plan is required following a Reporting Year, it shall be submitted by

4  July 31 following the previous Reporting Year that demonstrated an Exceedance.

5          a.    Action Plan Requirements. Each Action Plan submitted shall include at a

6  minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s);

7  (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional

8  BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the

9  design plans and calculations of these additional BMPs; and (4) time schedules for implementation

10  of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are

11  implemented as soon as possible, but in no case later than November 1 of the upcoming Reporting

12  Year. Defendant shall notify Coastkeeper & The Otter Project in writing when an Action Plan has

13  been implemented.

14          b.    Action Plan Review: Coastkeeper & The Otter Project shall have thirty (30)

15  days upon receipt of Defendant's Action Plan to provide Defendant with comments. Within twenty

16  (20) days of receiving Coastkeeper & The Otter Project's proposed revisions to an Action Plan,

17  Defendant shall consider each of Coastkeeper & The Otter Project's recommended revisions and

18  accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed

19  and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any

20  disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution

21  provisions, set out in Section IV below.

22          c.    Action Plan Payments: Defendant shall pay Two Thousand Dollars ($2,000)

23  each time an Action Plan is submitted to Coastkeeper & The Otter Project. Payments shall be made

24  to "Aqua Terra Aeris Law Group LLP" addressed to: Aqua Terra Aeris Law Group LLP, Attn:

25  Anthony M. Barnes and delivered by overnight carrier to Aqua Terra Aeris Law Group, 4030

26  Martin Luther King Jr. Way, CA 94609. Failure to submit a payment as required under this

27  paragraph will constitute a breach of the Consent Decree.

**D. VISUAL OBSERVATIONS**

24.     Storm Water Discharge Observations: During the Term, Defendant shall conduct visual observations during the Facility's operating hours during every rain event that produces a discharge at all locations where storm water is discharged from the Facility.

25.     Non-Storm Water Discharge Observations: During the Term, Defendant shall conduct monthly non-storm water visual observations at each discharge location.

26.     Visual Observation Records. Defendant shall maintain observation records to document compliance with paragraphs 24 and 25 and shall provide Coastkeeper & The Otter Project with a copy of those records within fourteen (14) days of receipt of a written request from Coastkeeper & The Otter Project for those records.

27.     Implementation: Activities required by the General Permit and this Consent Decree shall be conducted by a Qualified Industrial Storm Water Practitioner ("**QISP**"), as defined in Section IX.A of the Permit) familiar with the requirements of this Consent Decree, the General Permit, and the Facility's SWPPP. Within thirty (30) days of the Effective Date, Defendant shall update the SWPPP to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation.

28.     SWPPP and Monitoring Implementation Plan ("**MIP**") Revisions and Update: Within thirty (30) days of the Effective Date, Defendant shall amend the Facility's SWPPP and MIP to incorporate the requirements in this Consent Decree. Defendant agrees to submit the updated SWPPP and MIP to Coastkeeper & The Otter Project upon completion for review and comment.

     a.     Review of SWPPP and/or MIP: Coastkeeper & The Otter Project shall have thirty (30) days from receipt of the amended SWPPP and/or MIP to propose any changes. Within thirty (30) days of receiving Coastkeeper & The Otter Project's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or specify in writing why a change is not incorporated;

     b.     Defendant shall revise the SWPPP and MIP if there are any material changes in the Facility's operations, including but not limited to changes in storm water discharge points or BMPs within thirty (30) days of the changes, which will be subject to Coastkeeper & The Otter Project's review and comment as provided in this paragraph.

c.    The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP or MIP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below.

**E.  COMPLIANCE MONITORING AND REPORTING**

29.    Every year during the Term, Coastkeeper & The Otter Project may conduct one annual site inspection ("**Site Inspection**") for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection for the term of the Consent Decree at Plaintiffs' request. Plaintiffs shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and Coastkeeper & The Otter Project will provide Defendant with as much notice as possible—but at least twenty-four (24) hours' notice prior to a Site Inspection in anticipation of wet weather, and seventy-two (72) hours' notice during dry weather. For any Site Inspection requested to occur in wet weather, Plaintiffs shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by telephone and electronic mail to the individual(s) designated below at paragraph 60. During the Wet Weather inspection, Plaintiffs may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that a Qualifying Storm Event is occurring. Defendant shall collect the sample and provide a split sample to Coastkeeper & The Otter Project. Coastkeeper & The Otter Project's representative(s) may observe the split sample(s) being collected by Defendant's representative. Coastkeeper & The Otter Project shall be permitted to take photographs or video recording during any Site Inspection.

30.    <u>Document Provision</u>. During the term of this Consent Decree, Defendant shall notify and submit documents to Coastkeeper & The Otter Project as follows:

a.    Defendant shall copy Coastkeeper & The Otter Project on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any

documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

b.     Any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality shall be sent to Coastkeeper & The Otter Project within ten (10) business days of receipt by Defendant. Defendant shall mail paper copies or email electronic copies of documents to Coastkeeper & The Otter Project at the relevant notice address contained below.

31.     <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with Plaintiffs' monitoring of Defendants' compliance with this Consent Decree by paying One Thousand Five Hundred Dollars ($1,500.00) within forty-five (45) days of the Effective Date, made payable to: California Coastkeeper, Inc., Attn: Sean Bothwell and delivered by overnight carrier to 1100 11th St, 3rd Floor, Sacramento, CA 95814.

32.     Failure to submit payment as required under this paragraph will constitute breach of this Consent Decree.

**F.     ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST**

33.     <u>Environmental Mitigation Project</u>: To remediate the alleged environmental harms resulting from allegations in the Complaint, Defendant agrees to make a total payment of Ten Thousand Dollars ($10,000.00) to the Rose Foundation made within forty-five (45) days of the Effective date, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th St APT 102, Oakland, CA 94607. Defendant shall provide Coastkeeper & The Otter Project with a copy of such payment.

34.     <u>Coastkeeper & The Otter Project's Fees and Costs</u>: Defendant agrees to pay a total of Twenty-Eight Thousand Five Hundred Dollars ($28,500.00) to Coastkeeper & The Otter Project to partially reimburse Plaintiffs for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and negotiating a resolution of this matter. The payment shall be made payable to: California Coastkeeper, Inc., Attn: Sean Bothwell and delivered by overnight carrier to 1100 11th St, 3rd Floor, Sacramento, CA 95814.

35.     Defendant shall make a remediation payment of Eight Hundred Dollars ($800.00) for each missed deadline included in this Consent Decree that is not excused by Coastkeeper & The Otter Project in writing to an extension of that particular deadline. Payments for missed deadlines shall be made to: Rose Foundation for Communities and the Environment, ATTN: Rose Foundation, 201 4th Street, Ste. 102, Oakland, California 94607. Defendant agrees to make the stipulated payment within thirty (30) days of a missed deadline or failure to sample. Defendant shall provide Coastkeeper & The Otter Project with a copy of each such payment at the time it is made.

36.     Interest on Late Payments: Defendant shall pay interest on any payments, fees, or costs owed to Coastkeeper & The Otter Project under this Consent Decree that Coastkeeper & The Otter Project has not received by the due date. The interest shall accrue starting the first day after the payment is due and shall be computed at a rate of 1% per month (12% per year). Interest on late payments shall be made payable to Coastkeeper & The Otter Project and sent to the address listed in paragraph 60.

IV.     **DISPUTE RESOLUTION**

37.     This Court shall retain jurisdiction over this matter for the term of this Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

38.     Meet and Confer. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

39.     Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days of (or longer, if the Parties elected to extend) the meet and confer described in Paragraph 38, the Parties agree to request a settlement meeting or conference before the Magistrate Judge assigned to this action. The Settling Parties agree to file any waivers necessary for the Magistrate Judge to preside over any settlement meeting or conference. In the event that the Settling Parties cannot

resolve the dispute within sixty (60) days of the initial settlement meeting or conference with the Magistrate Judge, the Settling Parties agree that that the dispute may be submitted for formal resolution by filing a motion before the Court. The Settling Parties agree to request an expedited hearing schedule on the motion.

40.      In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

V. **NO ADMISSION OR FINDING**

42.      Neither this Agreement Consent Decree nor any payment pursuant to this Agreement Consent Decree shall constitute evidence or be construed as a finding, adjudication, or acknowledgment of any fact, law or liability nor shall it be construed as an admission of violation of any law, rule or regulation. However, this Consent Decree and/or any payment pursuant to the Consent Decree may constitute evidence in actions seeking compliance with this Consent Decree.

VI. **MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

43.      Plaintiffs' Waiver and Release of Defendant. In consideration of the above, upon the Effective Date, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised based on the facts alleged in the 60-Day Notice up to and including the day the Term of this Consent Decree expires.

44.      Defendant's Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiffs, its officers and directors, from and waives all claims related to the 60-Day Notice up to and including the day the Term of this Consent Decree expires.

45.      Nothing in this Consent Decree limits or otherwise affects Plaintiffs' rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative

body on any matter relating to Defendant's compliance at the Facility with the Stormwater Permit or the Clean Water Act occurring or arising after the Effective Date.

VII. **MISCELLANEOUS PROVISIONS**

46.     No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

47.     Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

48.     Authority. The undersigned representatives for Plaintiffs and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

49.     Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

50.     Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

51.     Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the Consent Decree between the Parties and expressly supersedes any and all prior oral or written Consent Decrees, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

52.     <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

53.     <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

54.     <u>Diligence</u>: Defendant shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

55.     <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does not mean that Defendant is complying with the Industrial General Permit, the Clean Water Act, or any other law, rule, or regulation.

56.     <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

57.     <u>Modification</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

58.     <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiffs within ten (10) days of any assignment.

59.     <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental

agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

60.   Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendant: |
|---|---|
| Anthony M. Barnes | Jeanne Zolezzi |
| Aqua Terra Aeris Law Group LLP | Herum\Crabtree\Suntag |
| 43030 Martin Luther King Jr. Way | 5757 Pacific Avenue, Suite 222 |
| Oakland, CA 94609 | Stockton, CA 95207 |
| amb@atalawgroup.com | |
| With copies to: | With copies to: |
| California Coastkeeper Alliance | Mr. Jon Fanoe |
| Erin Clancy, Staff Attorney | Sturdy Oil Company |
| 1100 11th Street, 3rd Floor | 33 Associated Lane |
| Sacramento, CA 95814 | Pajaro, CA 95076 |
| The Otter Project& Monterey Coastkeeper | |
| CEO, The Otter Project | |
| Program Manager, Monterey Coastkeeper | |
| P.O. Box 269 | |
| Monterey, CA 93942 | |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

1

2    Dated: _____, 2020        By: _____
                                            California Coastkeeper Alliance
3                                           Sean Bothwell, Executive Director

4

5    Dated: _____, 2020        By: _____
                                            The Otter Project& Monterey Coastkeeper
6                                           CEO, The Otter Project

7

8    Dated: 12/14_____, 2020         By: _____

9                                           Joe Fanoe, President
                                            Sturdy Oil Company
10

11

12   APPROVED AS TO FORM

13
                                       AQUA TERRA AERIS LAW GROUP
14

15

16   Dated: _____, 2020        By: _____
                                            Anthony M. Barnes
17                                          Attorney for Plaintiffs
                                            California Coastkeeper Alliance, The Otter
18                                          Project, Inc., and Monterey Coastkeeper

19

20                                     HERUM\CRABTREE\SUNTAG

21

22   Dated: 12/15_____, 2020         By: _____
                                            Jeanne Zolezzi
23                                          Attorney for Defendant
                                            Sturdy Oil Company
24

25

26

27

28

Dated: 12/17, 2020

By: _____
California Coastkeeper Alliance
Sean Bothwell, Executive Director

Dated: 12/15, 2020

By: _____
The Otter Project& Monterey Coastkeeper
CEO, The Otter Project Steve Shimek

Dated: _____, 2020

By: _____
Joe Fanoe, President
Sturdy Oil Company

APPROVED AS TO FORM

AQUA TERRA AERIS LAW GROUP

Dated: 12/17, 2020

By: _____
Anthony M. Barnes
Attorney for Plaintiffs
California Coastkeeper Alliance, The Otter
Project, Inc., and Monterey Coastkeeper

HERUM\CRABTREE\SUNTAG

Dated: _____, 2020

By: _____
Jeanne Zolezzi
Attorney for Defendant
Sturdy Oil Company

17

1  **IT IS SO ORDERED.**
2  **FINAL JUDGMENT**

3      Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall
4  constitute a final judgment between the Plaintiffs and Defendant.

5

6

7  Dated:    February 26, 2021                    NORTHERN DISTRICT OF CALIFORNIA

8

9

10  _____
    HO_____M. COUSINS
11  United _____e



12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE